HDM/MRG:SCJ
F. #2024R00829

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
* JANUARY 21, 2025 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------- X

UNITED STATES OF AMERICA

- against -

SEUNG Y. LEE,
also known as "Kevin Lee,"

Defendant.

-------------------------- X

I N D I C T M E N T

Cr. No. 25-CR-21
(T. 18, U.S.C., §§ 982(a)(2)(A), 982(b)(1), 1349 and 3551 et seq.; T. 21, U.S.C., § 853(p))

Judge William F. Kuntz, II
Magistrate Judge Marcia M. Henry

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise stated:

I. The Defendant, Co-Conspirators and Relevant Entities

1. SEUNG Y. LEE, also known as "Kevin Lee," was a resident of New Jersey. LEE controlled East Pinnacle Corp., d/b/a/ Pinnacle Capital ("Pinnacle"), which had its principal place of business in Fort Lee, New Jersey.

2. Co-Conspirator 1 ("CC-1"), an individual whose identity is known to the Grand Jury, was a resident of New Jersey. CC-1 controlled Company 1, an entity the identity of which is known to the Grand Jury, with a business address in Fort Lee, New Jersey.

3. Co-Conspirator 2 ("CC-2"), an individual whose identity is known to the Grand Jury, was a resident of New York. CC-2 controlled Company 2, an entity the identity of which is known to the Grand Jury, which had its principal place of business in Flushing, New York.

4. Co-Conspirator 3 ("CC-3"), an individual whose identity is known to the Grand Jury, was a resident of New Jersey. CC-3 controlled Company 3, an entity the identity of which is known to the Grand Jury, which had its principal place of business in Flushing, New York.

II. The Fraudulent Scheme

5. In or about and between January 2015 and March 2022, the defendant SEUNG Y. LEE, together with others, including CC-1, CC-2 and CC-3, engaged in a scheme to defraud financial institutions by providing the financial institutions with false income and employment information for loan applicants to induce the financial institutions to extend home equity lines of credit ("HELOC") loans and other residential loans to the loan applicants (the "HELOC Fraud Scheme").

6. In the HELOC Fraud Scheme, loan applicants agreed to pay CC-1, who controlled Company 1, CC-2, who controlled Company 2, and CC-3, who controlled Company 3, a fee or commission in exchange for their assistance in obtaining a HELOC or other residential loan. Many of the loan applicants were members of the Asian-American immigrant community who had had no, low or unverified income but owned property with some equity value. The loan applicants provided CC-1, CC-2, CC-3 and representatives of Company 2 or

Company 3, with information regarding their income, employment and the property used to secure the loan.

7. CC-2 and CC-3, as well as other representatives from Company 2 and Company 3, typically forwarded the information about their loan applicant customers to CC-1, who would then forward the information to the defendant SEUNG Y. LEE and other representatives of Pinnacle. LEE and other representatives of Pinnacle would then create and submit falsified loan applications and false supporting documents to a financial institution on behalf of the loan applicants.

8. The defendant SEUNG Y. LEE and the co-conspirators also took steps to conceal the scheme. Specifically, if it seemed likely that a particular financial institution would attempt to verify employment or income information directly with a loan applicant or the loan applicant's purported employer, LEE would convey the falsified income and employment information back to CC-1, who would then relay that information to his own clients, or to CC-2 or CC-3, for them to relay to their clients.

9. Once a loan closed and the loan proceeds were issued to the loan applicants involved in the HELOC Fraud Scheme, CC-1 would receive, either directly from his own customers, or from CC-2 or CC-2 for their customers, a percentage of the total loan amount as a fee. The fee typically ranged from 2% to 3% of the loan proceeds, and CC-1 would then forward a portion of that fee back to Pinnacle's bank accounts.

10. Between approximately January 2016 and March 2022, Company 1 received over $2,000,000 from multiple sources, including approximately $575,000 from

Company 2 and other entities controlled by CC-2, and $200,000 from Company 3. During the same period, Company 1 paid over $800,000 to Pinnacle.

## CONSPIRACY TO COMMIT WIRE FRAUD AND BANK FRAUD

11. The allegations contained in paragraphs one through 10 are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between January 2015 and March 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SEUNG Y. LEE, also known as "Kevin Lee," together with others, did knowingly and intentionally conspire:

(a) to devise a scheme and artifice to defraud financial institutions and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

(b) to execute a scheme and artifice to defraud one or more financial institutions, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of, such financial institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, in connection with the HELOC Fraud Scheme, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

13. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

14. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(A) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

s/

FOREPERSON

By David Pitluck, Assistant U.S. Attorney

JOHN J. DURHAM
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK