JPL:SCJ/TM
F. #2024R00829

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA    25 CR 21 (HG)

- against -

SEUNG Y. LEE,
also known as "Kevin Lee,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# GOVERNMENT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Shannon C. Jones
Tara McGrath
Assistant U.S. Attorneys
(Of Counsel)

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. The Court Should Admit Evidence of the Defendant's Submission of Fraudulent Loan Applications to Financial Institutions on behalf of Individuals Beyond Those Referred by CC-1, CC-2/Company 2 and CC-3/Company 3 ........ 4

A. Background ........ 4

B. Applicable Law ........ 5

C. Evidence of the Defendant's Involvement in Other Fraudulent Bank Loan Applications Should be Admitted ........ 8

II. The Court Should Admit Statements of the Defendant's Co-Conspirators, Agents and Employees Subject to Connection ........ 8

A. Applicable Law ........ 9

1. Rule 801(d)(2)(D) ........ 9

2. Rule 801(d)(2)(E) ........ 10

B. Statements to be Admitted ........ 12

III. The Court Should Admit Loan Applications and Agreements as "Verbal Acts" ........ 13

IV. The Court Should Admit ACRIS Records Under Rule 803 ........ 14

V. The Court Should Preclude the Defendant from Presenting Evidence and Argument Regarding Any Good Faith Belief that the Victim Banks Would Not Suffer a Loss ........ 16

VI. The Court Should Preclude the Defendant from Raising a "Blame the Victim" Defense ........ 17

VII. The Court Should Preclude Argument Regarding Selective Prosecution of the Defendant ........ 19

VIII. The Court Should Preclude Defense Evidence or Argument Concerning the Defendant's Personal, Health or Family Circumstances ........ 20

IX. The Court Should Preclude Evidence or Argument Concerning the Punishment or Collateral Consequences of a Conviction ........ 21

X. The Court Should Preclude Evidence Regarding the Defendant's Lack of Criminal Records or Evidence of Specific Instances of Good Conduct ........ 22

CONCLUSION ........ 23

## PRELIMINARY STATEMENT

The government respectfully submits the following motions in limine in anticipation of trial in this matter. The defendant, Seung Y. Lee, also known as "Kevin Lee," is charged with conspiracy to commit wire fraud and bank fraud, in violation of Title 18, United States Code, Section 1349. This charge arises from the defendant's collusive scheme to defraud financial institutions into extending loans based on false information provided in loan applications.

The government respectfully submits that the Court should permit the government to introduce the following evidence at trial:

- Evidence of the defendant's involvement in the submission of false loan applications on behalf of loan applicants beyond the clients of the three specific co-conspirators listed in the Indictment, as both direct evidence of the charged scheme and, in the alternative, as evidence of the defendant's knowledge and intent pursuant to Rule 404(b);

- Statements of the defendant's co-conspirators and agents and employees pursuant to Federal Rule of Evidence 801(d), subject to connection;

- Evidence of loan applications and loan agreements as non-hearsay "verbal acts"; and

- Deeds and other property records obtained from the New York City Department of Finance's Automated City Register Information System ("ACRIS") as records of, or statements in, documents that affect an interest in property.

The government also respectfully moves the Court to preclude the defendant from offering evidence and argument related to the following subjects:

- Any purported reliance on the loan applicants' credit history and the appraisal value of the homes used to secure the loans to demonstrate the defendant's good faith or lack of fraudulent intent;

- Any purportedly unreasonable reliance on the fraudulent misrepresentations by the victim financial institutions;

- Evidence and argument related to the government's charging decisions; and

- Evidence and argument related to improper and irrelevant considerations including punishment and personal circumstances.

For the reasons set forth below, the government respectfully submits that the Court should grant these motions in their entirety.

BACKGROUND

The Indictment alleges that, in or about and between January 2015 and March 2022, the defendant, together with others, engaged in a scheme to defraud financial institutions by providing the financial institutions with false income and employment information for loan applicants to induce the financial institutions to extend home equity lines of credit ("HELOC") loans and other residential loans to the loan applicants (the "HELOC Fraud Scheme"). The defendant is charged with engaging in a conspiracy to commit wire fraud and bank fraud as part of the HELOC Fraud Scheme.

The defendant controlled East Pinnacle Corp., d/b/a/ Pinnacle Capital ("Pinnacle"), which had its principal place of business in Fort Lee, New Jersey. The defendant conspired with others, including Co-Conspirator 1 ("CC-1"), who controlled Company 1, which was located in Fort Lee, New Jersey, Co-Conspirator 2 ("CC-2"), who controlled Company 2, which was located in Flushing, New York, and Co-Conspirator 3 ("CC-3"), who controlled Company 3, which was also located in Flushing, New York, to execute the HELOC Fraud Scheme.

In the HELOC Fraud Scheme, loan applicants agreed to pay CC-1, CC-2, and CC-3, or their respective companies, fees or commissions in exchange for their assistance in obtaining a HELOC or other residential loan. Many of the loan applicants were members of the Asian-American immigrant community who had had no, low or unverified income but owned property with some equity value. The loan applicants provided CC-1, CC-2 and CC-3, and representatives

of Company 2 and Company 3, with information regarding their income, employment and the property used to secure the loan.

CC-2 and CC-3, as well as other representatives from their respective companies, typically forwarded the information about their loan applicant customers to CC-1, who acted as a middleman between the defendant and CC-2 and CC-3. CC-1 would forward the loan applicant information to the defendant and other representatives of Pinnacle. The defendant and other representatives of Pinnacle would then create and submit falsified loan applications and false supporting documents to financial institutions on behalf of the loan applicants.

The defendant and his co-conspirators also took steps to conceal the scheme. For example, if it seemed likely that a particular financial institution would attempt to verify employment or income information directly with a loan applicant or the loan applicant's purported employer, the defendant or his employees would convey the falsified income and employment information back to CC-1, who would then relay that information to his own clients, or to CC-2 and CC-3, or their employees, for them to relay to the clients of Company 2 and Company 3.

Once a loan closed and the loan proceeds were issued to the loan applicants involved in the HELOC Fraud Scheme, CC-1 would receive, either directly from his own customers, or from CC-2 or CC-2 for their customers, a percentage of the total loan amount as a fee. The fee typically ranged from 2% to 3% of the loan proceeds, and CC-1 would then forward a portion of that fee back to Pinnacle's bank accounts.

<u>ARGUMENT</u>

I. <u>The Court Should Admit Evidence of the Defendant's Submission of Fraudulent Loan Applications to Financial Institutions on behalf of Individuals Beyond Those Referred by CC-1, CC-2/Company 2 and CC-3/Company 3</u>

The Court should admit evidence of fraudulent loan applications submitted to financial institutions by the defendant and his company Pinnacle on behalf of individuals beyond those referred by CC-1, CC-2 and CC-3. Such evidence is direct proof of the charged scheme, including the defendant's control of Pinnacle and the defendant's knowledge and intent. To the extent that such evidence includes uncharged prior bad acts, it is also admissible pursuant to Federal Rule of Evidence 404(b).

A. <u>Background</u>

As set forth in the Indictment, fraudulent loan applicants were submitted to financial institutions by the defendant and his company, Pinnacle, on behalf of loan applicants whose information was referred to the defendant and Pinnacle by CC-1. CC-1, in turn, received loan applicant information from his own clients, as well as the clients of CC-2 and CC-3, and their respective companies, Company 2 and Company 3, which CC-1 forwarded to the defendant and Pinnacle. However, CC-1, CC-2/Company 2 and CC-3/Company 3, were not the exclusive source of business for the defendant and Pinnacle. For example, for the period of January 2017 through June 30, 2022, Pinnacle's bank records show deposits totaling more than $7 million dollars, but only approximately $650,000 of that amount originated with CC-1, who paid Pinnacle approximately half of the money he collected from his clients, CC-2/Company 2 and CC-3/Company 3. The defendant and Pinnacle submitted fraudulent loan applications to financial institutions on behalf of clients beyond the clients of CC-1, CC-2 or CC-3.

As one example, in an email exchange dated December 5, 2017, between the defendant, another co-conspirator of the defendant's ("CC-4"), and a representative of Pinnacle,

which copied CC-1, the defendant refers to the "customer" of CC-4, who was seeking a loan from a financial institution. (DOJ-00048061). The defendant writes, "Applied $300k to Bethpage federal credit union bank as working at our company … Please ask your customer to open account. Here is job information: Pinnacle Capital Corp., … position: Asset Manager. Income: $19,250 per month." (Id.) In an email dated December 7, 2017, CC-1 emailed the defendant, "This is not mine," indicating that CC-4's customer was not referred by CC-1 and that CC-1 and CC-4 did not work together. Records from Bethpage Federal Credit Union ("Bethpage") indicate that the CC-4 customer received a HELOC loan from Bethpage on or about December 22, 2017. Bank records for Pinnacle show that on December 28, 2017, $5,500 was deposited into Pinnacle's account from the CC-4 customer. This evidence, that the defendant directly was involved in a scheme to provide false income employment and income information for a particular loan applicant to a financial institution, is the type of evidence that is central to the government's proof of the misrepresentations charged in the Indictment

B. Applicable Law

Evidence of uncharged criminal activity is not considered "other crimes" evidence under Federal Rule of Evidence ("Rule") 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotation marks and citation omitted); accord United States v. Reed, 576 F. App'x 60, 61 (2d Cir. 2014) (same, via summary order).

Moreover, the Second Circuit has explained that, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d

936, 941 (2d Cir. 1997). Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime." Id.; see also Fed. R. Evid. 401, 402. Evidence that "provide[s] background" for the alleged events may be admitted to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.3d 1380, 1388 (2d Cir. 1984)) (internal quotation marks omitted). Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997); see also United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense.").

Evidence of a defendant's other acts is also admissible under Rule 404(b) if relevant to an issue at trial other than the defendant's character, such as providing evidence of motive, intent, preparation, plan, knowledge, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). To be admissible, the probative value of such evidence must not be substantially outweighed by the risk of unfair prejudice. See Fed R. Evid. 403; United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000). The Second Circuit follows an "inclusionary approach," which admits all relevant "other act" evidence that does not serve the sole purpose of showing the defendant's bad character and that is not overly prejudicial. Evidence admissible pursuant to Rule 404(b) should not be excluded on grounds of unfair prejudice when the evidence does not "involve conduct more inflammatory than the charged crime[s]." United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (internal quotation marks and citation omitted). Thus, where the uncharged

crimes are similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test. See, e.g., id.; United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999); see also United States v. Rutkoske, 506 F.3d 170, 176-78 (2d Cir. 2007) (affirming district court's admission, in securities fraud case, of evidence of the defendant's involvement in a similar, separate fraudulent scheme involving other securities). The Court has broad latitude in determining whether to admit evidence pursuant to Rule 404(b), and its rulings will be reviewed only for abuse of discretion. See Inserra, 34 F.3d at 89.

When an indictment contains a conspiracy charge, "uncharged acts may be admissible as direct evidence of the conspiracy itself." United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994). As the Second Circuit has explained, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." Id. (quoting United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992)) (internal quotation marks omitted). The Second Circuit has also repeatedly held that evidence of uncharged crimes is admissible to establish the existence and development of a criminal relationship between coconspirators. See, e.g., United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (defendant's prior uncharged criminal activities with coconspirators are admissible to inform jury of the background of the conspiracy, to complete the story of the charged crimes, and to help explain how the illegal relationship between the participants in the crime developed); United States v. Pipola, 83 F.3d 556, 565-66 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case." (citation omitted)); United States v. Rosa, 11 F.3d 315, 333-34 (2d Cir. 1993) (holding that co-defendants' longstanding relationship, during which stolen property and narcotics crimes were committed,

"was properly admitted to explain how the illegal relationship between the two [defendants] had developed and to explain why [one defendant] had appointed [the other defendant] to a leading position in the Organization").

C. Evidence of the Defendant's Involvement in Other Fraudulent Bank Loan Applications Should be Admitted

The Court should admit evidence showing that the defendant and Pinnacle submitted fraudulent loan applications for clients beyond the clients of CC-1, CC-2, and CC-3 during the same time period charged in the Indictment. This evidence should be admitted as direct evidence of the scheme. For example, the email correspondence cited above both shows the defendant's direct knowledge of and participation in providing false income and employment information to a specific financial institution on behalf of CC-4's customer's loan application, and demonstrates the existence and development of the criminal relationship between the defendant and CC-1 because the defendant is discussing information about a fraudulent loan application with CC-1 albeit for CC-4's customer. It also demonstrates the understanding among co-conspirators that there are multiple participants in the scheme and conspiracy. As an alternative, such evidence is admissible under Rule 404(b) to show the defendant's knowledge, intent, motive, and the lack of accident. Likewise, there is little risk that this evidence will result in unfair prejudice to the defendant, as defined in Rule 403, because it is no more prejudicial than any other evidence of the defendant's participation in the HELOC Fraud Scheme.

II. The Court Should Admit Statements of the Defendant's Co-Conspirators, Agents and Employees Subject to Connection

At trial, the government intends to offer in its case-in-chief evidence of statements made by co-conspirators and various employees of Pinnacle pursuant to Rules 801(d)(2)(D) and 801(d)(2)(E), subject to connection in keeping with the practice in this district and Second Circuit

law.[1] The government anticipates introducing numerous emails among the co-conspirators, and their agents and employees, about the HELOC Fraud Scheme. In addition, the government anticipates introducing statements made by and on behalf of loan applicants to financial institutions in furtherance of the HELOC Fraud Scheme. The evidence at trial will establish by a preponderance that these co-conspirators, whether indicted or unindicted, were in fact part of the conspiracy. The Court should admit these statements at trial subject to connection in keeping with the practice in this district and Second Circuit law.

A. Applicable Law

1. Rule 801(d)(2)(D)

Rule 801(d)(2)(D) carves out from the definition of hearsay party admissions, statements made by an opposing party's agent or employee, when those statements are offered against the party. Included in this carve-out from the hearsay rule are statements "by the party's agent or employee on a matter within the scope of the relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). To establish a "sufficient foundation to support the introduction of vicarious admissions" under Rule 801(d)(2)(D), a party must establish: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency. Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 537 (2d Cir. 1992). "[A]dmissibility under this rule should be granted freely." Id. at 537.

Under clearly established Second Circuit precedent, an agency relationship exists for the purposes of Rule 801(d)(2)(D) where the declarant is the defendant's subordinate. In United States v. Rioux, 97 F.3d 648, 660 (2d Cir. 1996), the Second Circuit concluded that an

[1] Many of these statements are also admissible for non-hearsay purposes. For instance, statements made by the defendant's agents and co-conspirators to induce financial institutions to extend loans are admissible for their effect on the listener.

agency relationship exists for purposes of Rule 801(d)(2)(D) where the declarant is "answerable and directly responsible" to the defendant. In Zaken v. Boerer, 964 F.2d 1319, 1322-23 (2d Cir. 1992), the Second Circuit considered the circumstances under which statements of one corporate employee could be introduced against another. Noting that it "depends on the relationship between the declarant and the defendant," the court held that "[w]hen the factors proving an agency relationship are present, the testimony should not be excluded simply because it is offered against a corporate employee rather than the company itself." Id. Among other factors, the court considered whether the declarant was "answerable" to the defendant, and whether the matter was "within the scope of [the declarant's] agency." Id. at 1323 (concluding that vice president's statements were admissible against the company's owner); see also Pierce v. Rodriguez, 3:20-CV-1755 (SVN), 2023 WL 2646825, *5 (D. Conn. Mar. 27, 2023) (noting "[t]he statements of corrections officers have been deemed admissible under Rule 801(d)(2)(D) in cases involving individual defendant wardens and supervisory prison officials" and collecting cases); Nat'l Commc'ns Ass'n, Inc. v. AT&T Co., No. 92 Civ. 1735 (LAP), 1998 WL 118174, *38 (S.D.N.Y. Mar. 16, 1998) ("[I]t is enough that a declarant be 'answerable and directly responsible' to a supervisor." (citation omitted)); Guccione v. Hustler Magazine, Inc., 632 F. Supp. 313, 320 (S.D.N.Y. 1984) (statements made by corporate defendants' chief executive were admissions), rev'd on other grounds, 800 F.2d 298, 304 (2d Cir. 1986).

2. Rule 801(d)(2)(E)

Pursuant to Rule 801(d)(2)(E), a statement offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). "The law is well settled within this circuit that declarations that are otherwise hearsay may nevertheless be provisionally admitted, subject to connection of the defendant with the conspiracy alleged, as long as the trial court is ultimately satisfied that the

participation of the defendant against whom the declaration is offered has been established by a fair preponderance of the evidence independent of the hearsay utterances." United States v. Cambindo Valencia, 609 F.2d 603, 630 (2d Cir. 1979). "To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of the conspiracy." United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999).

"The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." Id. "[W]hile the hearsay statement itself may be considered in establishing the existence of the conspiracy, 'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" Id. (quoting United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996)). Moreover, statements that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy" are admissible. Id. (internal quotation marks and citation omitted). But the "Government need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy." United States v. Paredes, 176 F. Supp. 2d 183, 187 (S.D.N.Y. 2001). Indeed, a communication "with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the plan's goals" is admissible. Id.

Independent evidence must corroborate the hearsay statements to show that they are reliable. But the law does not require that the government must establish fully that an individual is a co-conspirator before admitting hearsay statements of such co-conspirator. That requirement would swallow the hearsay exception because it is often the communications among

individuals that fully establish the scope, nature and duration of the conspiracy. Indeed, conspiracy depends on a verbal or non-verbal communicative act—an agreement. Rather, as Cambindo Valencia, Paredes and Gigante demonstrate, there must be "some independent corroborating evidence of the defendant's participation in the conspiracy" and the totality of the evidence—both the independent corroborative evidence and the hearsay statements themselves—must be considered when the Court determines whether a particular individual is a co-conspirator. Gigante, 166 F.3d at 82 (internal quotation marks and citation omitted).

B. Statements to be Admitted

The government expects to prove at trial that the defendant was a member of the conspiracy alleged in the Indictment. The government expects to show that the defendant, CC-1, CC-2, CC-3, and agents and employees of Pinnacle, Company 2 and Company 3, as well as certain loan applicants, knowingly participated in a scheme to convey false income and employment information to financial institutions to induce them to extend loans. Therefore, the Court should permit these statements pursuant to Rule 801(d)(2)(E). In addition, the Court should permit the government to introduce statements of the defendant's employees and agents pursuant to Rule 801(d)(2)(D).

The government does not ask the Court to rule on the admissibility of any particular emails or other out-of-court statements by co-conspirators or agents that the government intends to offer at this time but merely provides notice of some of the types of statements the government will seek to introduce at trial. The Court should admit these statements at the appropriate time, including subject to connection in certain instances, as Second Circuit Case law permits. "[S]tatements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence of" the requirements of Rule 801(d)(2)(E). United States v. Tracy, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing United States v.

Geaney, 417 F.2d 1116, 1120 (2d Cir. 1969)); see also United States v. Shyne, No. S4 05-CR-1067 (KMK), 2007 WL 1075035, at *34 (S.D.N.Y. Apr. 5, 2007) ("A trial court need not . . . make these determinations prior to trial."). This practice is "well-settled" in this circuit, United States v. Labate, S1 00-CR-632 (WHP), 2001 WL 533714, at *21 (S.D.N.Y. May 18, 2001), and avoids the need for a "mini-trial, significantly prolonging the proceedings in the case and affording the defendants a complete preview of the government's evidence," United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985).

## III. The Court Should Admit Loan Applications and Agreements as "Verbal Acts"

The government intends to offer into evidence loan applications and loan agreements not for their truth, but rather to establish that the defendant and his co-conspirators submitted or entered into them. For example, the government intends to offer in its direct case contracts including loan applications and agreements that were part of the HELOC Fraud Scheme, even if the loans were not ultimately extended according to the terms of the agreements.

"If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) Advisory Committee Notes. Thus, "verbal acts that give rise to legal consequences," such as contracts and other agreements, are not hearsay. United States v. Cardascia, 951 F.2d 474, 486-87 (2d Cir. 1991).

Because the loan application and agreements that the government intends to offer constitute acts of independent legal significance or acts intended to induce lenders into taking specific actions, they are admissible non-hearsay.[2]

[2] There are multiple grounds for the admissibility of these documents. Because the government alleges that certain of the statements contained in the applications are false, they are

IV. The Court Should Admit ACRIS Records Under Rule 803

Rule 803 provides exceptions to the general rule against hearsay for records of documents that affect an interest in property, Fed. R. Evid. 803(14), and relevant statements contained in such documents, Fed. R. Evid. 803(15). Deeds, mortgages, and other property records filed on New York City's Automated City Register Information System ("ACRIS") are admissible under both of these exceptions. For HELOC loans secured by properties located in Manhattan, Queens, Bronx, and Brooklyn, a mortgage document is filed on ACRIS which includes a variety of information about the loan, including the address of the property used to secure the loan, name of the Mortgagee/Lender, the name of Mortgager/Borrower, and the date and amount of the loan. The ACRIS mortgage document may also indicate if the loan is a HELOC loan. If the loan is subsequently repaid, a satisfaction or release of mortgage is later filed on ACRIS. A number of the fraudulent loans in this case were secured by properties located in Queens.

Rule 803(14) provides that a "record of a document that purports to establish or affect an interest in property" is not hearsay as long as the record "is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it," the record "is kept in a public office," and "a statute authorizes recording documents of that kind in that office." Fed. R. Evid. 803(14). The New York City Register, whose records are maintained and accessible via ACRIS, is a public office authorized by statute to record every instrument affecting real estate in New York City. See New York City, N.Y., Code § 7-607. Documents affecting real property filed with the New York City Register have been regularly admitted by courts in within this Circuit under Rule 803(14). See, e.g., CIT

---

*per se* not offered for their truth. Moreover, the statements contained in these documents are also admissible for the non-hearsay purpose of showing what was said to the financial institutions. See United States v. Dupree, 706 F.3d 131, 136 (2d Cir. 20133) ("a statement offered to show its effect on the listener is not hearsay").

Bank, N.A. v. Schiffman, No. 16-CV-5772 (DLI), 2022 WL 912520, at *2 (E.D.N.Y. Mar. 29, 2022) (admitting loan modification filed with the City Register under Rule 803(14)); see also M&T Mortgage Corp. v. Miller, No. 02-CV-5410 (NG), 2007 WL 4246440 (E.D.N.Y. Nov. 29, 2007) ("[D]efendants may not assert any objections based on concerns about the authenticity or integrity of the records displayed in ACRIS unless they can identify with specificity a reason for questioning the authenticity or integrity of a given deed or other recorded document in the system").

Likewise, Rule 803(15) provides that "[a] statement contained in a document that purports to establish or affect an interest in property" is also not hearsay if the statement "was relevant to the document's purpose—unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document." Fed. R. Evid. 803(15). As explained in the Advisory Committee Note, this rule allows for the admission of statements in deeds and other "dispositive documents," i.e., documents that dispose of an interest in property. Fed. R. Evid. 803 Advisory Committee Note. "The requirements for admissibility under Rule 803(15) are that the document is authenticated and trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement." Silverstein v. Chase, 260 F.3d 142, 149 (2d Cir. 2001). The reliability of ACRIS in accurately recording documents filed with the New York City Register is well established. Not only do private parties rely on records maintained in ACRIS, but courts in this district also routinely take judicial notice of documents filed on ACRIS when issuing decisions in civil cases. See Disame v. Kantharia, No. 23-CV-7102 (HG), 2023 WL 6879614, at *2 n.2 (E.D.N.Y. Oct. 18, 2023) (collecting cases). Absent any inconsistent later conduct, relevant statements in property records maintained in ACRIS are admissible under Rule 803(15).

V. The Court Should Preclude the Defendant from Presenting Evidence and Argument Regarding Any Good Faith Belief that the Victim Banks Would Not Suffer a Loss

The Court should preclude any argument or evidence that the defendant had a good faith belief that the victim-financial institutions would be repaid in accordance with the terms of their loan agreements or would otherwise not lose money because the loans were fully secured by property. The defendant's belief in underlying credit worthiness of the loan applicants or their likelihood in repaying the loans at issue has no bearing on whether the defendant schemed to defraud the financial institutions or to obtain money from the financial institutions on behalf of the loan applicants by providing false employment and income information. Economic loss, let alone net economic loss, is not an element of the charged crime, and the Second Circuit has repeatedly held that a defendant's belief that a victim will ultimately not lose money is not a defense to fraud. Evidence or argument suggesting that the defendant is not guilty because he believed the loans were fully secured by homes and/or that the loan applicants would repay the loans is irrelevant and would serve only to confuse the jury and invite nullification.

Intent to cause economic loss is not an element of any of the charged statutes. See Kousisis v. United States, 606 U.S. ---, 145 S.Ct. 1382, 1391 (2025) (noting wire fraud "is devoid of an economic-loss requirement," and a defendant "need not . . . aim to inflict economic loss" to be guilty of the offense); Shaw v. United States, 580 U.S. 63, 68 (2016) (holding that 18 U.S.C. § 1344(1) does not "requir[e] that the victim bank ultimately suffer financial harm, or that the defendant intend that the victim bank suffer such harm"); Loughrin v. United States, 573 U.S. 351, 357 (2014) (holding that 18 U.S.C. § 1344(2) does not require an intent to defraud a bank).

A defendant's good faith belief that a bank loan would be repaid does not equate to good faith regarding his involvement in presenting misrepresentations to the victim-financial institutions. Indeed, the "well-intentioned belief that a business venture in which a defendant was

involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true." United States v. Okun, Cr. No. 08-132, 2009 WL 414009, at *3 (E.D. Va. Feb. 18, 2009) (citing United States v. Godwin, 272 F.3d 659, 666-67 (4th Cir. 2001)); United States v. Gole, 21 F. Supp. 2d 161, 166 (E.D.N.Y. 1997) ("The definition of good faith 'addresses the defendant's belief in the truth of the representations, and not the defendant's belief as to the ultimate success of the plan.'" (quoting Sand et al., Modern Federal Jury Instructions, Instruction 44-01 (2017 ed.)).

The Court should preclude the defendant at the outset from arguing that he lacked criminal intent because he believed the loans fraudulently obtained would be repaid, either through repayment by the loan applicant or through foreclosing on the home securing the loan. These arguments go only to the defendant's irrelevant belief that the victim-financial institutions might ultimately suffer no loss from the fraud. These arguments have no connection to whether the defendant conspired to provide false information to the financial institutions about the loan applicants' income and employment, and improperly confuse the issues before the jury. The Court should not wait for the defendant to make this improper argument and then attempt to cure the resulting| juror confusion and prejudice to the government through a curative instruction; that would be a needless waste of the jury's and the Court's time. Instead, the Court preclude the defendant from presenting this argument at the outset in advance of trial.

VI. The Court Should Preclude the Defendant from Raising a "Blame the Victim" Defense

The government anticipates that the defendant may seek to argue that the financial institutions who were victims of the HELOC Fraud Scheme effectively knew or should have known of the scheme and yet extended a HELOC loan anyway. But it is well-settled that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. See United States v. Kaufman, 617 F. App'x. 50, 52 (2d Cir. 2015)

(affirming convictions for crimes including bank fraud where the district court instructed the jury that "[v]ictim negligence, carelessness or gullibility is no defense to a charge of such fraud," holding such instruction "was a proper statement of the law" (internal quotation marks and citation omitted, alteration in original)). The Second Circuit has consistently held that the "foolish victim" standard is not a defense to fraudulent conduct. See id.; United States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007) (rejected "unreasonable victim" standard and noting that victim's gullibility is irrelevant); United States v. Thomas, 377 F.3d 232, 242-244 (2d Cir. 2004) (same).

Moreover, any argument that officials at financial institutions were or should have been on notice of the defendant's criminal conduct is irrelevant, because the victim is the financial institution itself, not its employees or officials. See United States v. Jimenez, 513 F.3d 62, 74 (3d Cir. 2008) ("It is the financial institution itself—not its officers or agents—that is the victim of the fraud § 1344 proscribes." (alteration adopted, internal quotation marks and citation omitted)); United States v. Yarmoluk, 993 F. Supp. 206, 209 (S.D.N.Y. 1998) ("[A]n institution may be defrauded even if its employees allow or participate in the fraudulent practices.").

It is irrelevant whether any bank agent knew or should have known that the HELOC loan applications were fraudulent, or whether they were negligent or foolish. The Court should therefore preclude the defendant from offering any arguments along these lines here.

## VII. The Court Should Preclude Argument Regarding Selective Prosecution of the Defendant

The government moves to preclude the defendant from introducing evidence and argument regarding the government's motives and charging decisions. In particular, the government seeks to preclude defendant from making reference to the fact that certain co-conspirators, including loan applicants, employees of the defendant or other participants in the HELOC Fraud Scheme have not been charged in an effort to suggest that the defendant was inappropriately targeted by the government. Any such argument would be false. In any event, whether true or not, the Court should preclude the defendant from presenting what are, in reality, thinly veiled nullification arguments to the jury.

Courts in this district routinely preclude defendants from argument related to the government's motives and charging decisions because this evidence is irrelevant and unfairly prejudicial. See, e.g., United States v. Ramsey, No. 21-CR-495 (ARR), ECF Dkt. No. 54, at 12–13 (E.D.N.Y. Mar. 15, 2023); United States v. Hill, No. 12-CR-214 (KAM), 2014 WL 198813, at *2 (E.D.N.Y. Jan. 14, 2014). The government's motives and charging decisions are irrelevant to the defendant's guilt or innocence. Because this evidence is irrelevant, it serves only to appeal to the jury's sympathies by creating a (false) appearance of unfairness and invites nullification and should be precluded pursuant to Rule 403. See Fed. R. Evid. 403; see also United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court—in the words of the standard oath administered to jurors in the federal courts, to 'render a true verdict according to the law and the evidence.'" (citation omitted)).

VIII. The Court Should Preclude Defense Evidence or Argument Concerning the Defendant's Personal, Health or Family Circumstances

The Court's power to exclude arguments concerning the defendant's personal, health, or family circumstances—arguments that the jury should render a verdict based on matters not in accordance with the law—arises from Rules 401, 402 and 403 of the Federal Rules of Evidence. Specifically, evidence is admissible only if it is both relevant—having "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," Fed. R. Evid. 401(a)—and not otherwise inadmissible, Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed R. Evid. 403.

"District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009). Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 Advisory Committee Note. Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy).

At this time, it is unclear what evidence, if any, the defendant may seek to introduce concerning any of his personal, health, or family circumstances. The defendant may, for example, seek to introduce evidence concerning his family. Such evidence, however, has no tendency to make any "facts of consequence" more or less probable. This sort of improper appeal to the jury should be excluded under Rule 403.

IX. The Court Should Preclude Evidence or Argument Concerning the Punishment or Collateral Consequences of a Conviction

The Court should preclude the defendant from referencing at trial any consequences of his convictions. While the defendant has not suggested that he intends to introduce any discussion of these consequences at trial, in an abundance of caution, the government moves to preclude at trial any discussion of the possible punishment the defendant faces or any collateral consequences of conviction.

Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant to the question of the defendant's guilt or innocence. The defendant's punishment is not a fact "of consequence" to be determined at trial. Therefore, any evidence of those issues is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt, and here, the government anticipates requesting that the Court instruct the jury in its usual manner that the subject of punishment is a matter for the Court and not the lawyers or the jury. See generally Sand et al., Modern Federal Jury Instructions, Instruction 9-01 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed . . . [and] not to consider the consequences of their verdicts" (internal quotation marks and citation omitted)). This instruction likely will be for naught, however, if defendant's counsel discusses, alludes to, or otherwise brings matters of punishment to the jury's attention through questioning,

opening and closing arguments, comments in any voir dire or through the defendant's own testimony.

The Court should thus preclude the defendant from making any references during trial to the nature of the charge being a felony, or to the potential punishment or collateral consequences he may face.[3]

X. The Court Should Preclude Evidence Regarding the Defendant's Lack of Criminal Records or Evidence of Specific Instances of Good Conduct

The Federal Rules of Evidence ordinarily prohibit witnesses from proving good character through specific instances of conduct. See Fed. R. Evid. 405(a). The Second Circuit has concluded, however, that evidence of a lack of prior convictions or arrests is admissible for the purpose of gauging the credibility of a testifying witness. See United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence). Thus, such evidence becomes relevant and admissible if—and only if—the defendant testifies, and even then for the limited purpose of providing background information relating to his credibility as a witness.

And, as noted above, district courts have broad discretion to exclude evidence that has an undue tendency to suggest decision on an improper basis, including sympathy.

Consistent with Blackwell, the government requests that the defendant be precluded from informing the jury of his lack of felony criminal history, unless and until he

---

[3] Nevertheless, if the defendant exercises his right to testify, the government should be permitted to cross-examine him about the potential consequences of conviction because, under those circumstances, it is relevant to each defendant's credibility as a witness. See Davis v. Alaska, 415 U.S. 308, 316 (1974) (discussing use of cross-examination to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand," and noting the "partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony" (internal quotation marks and citation omitted)).

chooses to testify. Counsel should not be permitted to advise the jury of the defendant's lack of criminal history in opening statements, through cross examination or otherwise.

CONCLUSION

For the reasons set forth above, the government respectfully submits that the Court should grant the government's motions in limine.

Dated: Brooklyn, New York
September 26, 2025

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

/s/
Shannon Jones
Tara McGrath
Assistant U.S. Attorneys
(718) 254-7000

Cc: Clerk of the Court (HG)
Defense counsel (by ECF)